**VANDERBILT MORTGAGE & FINANCE, INC.,**
**Appellant,**

v.

**Michael POSEY, et uxor, Appellees.**

**No. 06–04–00013–CV.**

Court of Appeals of Texas,
Texarkana.

Submitted July 28, 2004.

Decided Sept. 9, 2004.

C. Ed Harrell Jr., Hughes, Watters & Askanase, LLP, Houston, for appellant.

Michael T. Maher, Dallas, David C. Turner Jr., Jana Turner, Turner & Turner, LLP, Bonham, for appellees.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

The dispute in this case involves alleged misrepresentations made by Vanderbilt Mortgage & Finance, Inc., concerning

mortgages on manufactured homes. Michael and Betty Posey, Texas residents, sued individually and on behalf of a class composed of members from forty-four states. The Poseys alleged numerous deceptive trade practices under the Tennessee Consumer Protection Act (TCPA), including that Vanderbilt misrepresented the amount of interest due on the mortgage secured by their mobile home located in Texas and misrepresented when insurance escrow payments could be collected under the contract. *See* TENN.CODE ANN. § 47–18–101, *et seq.* (LEXIS through 2003 legislation). The district court granted the motion to certify the class pursuant to Texas Rule of Civil Procedure 42(b)(4), but denied the motion to certify the class pursuant to Texas Rule of Civil Procedure 42(b)(2). Vanderbilt brought this interlocutory appeal of the certification of the class. In their cross-appeal, the Poseys challenge the trial court's denial of certification under Rule 42(b)(2). We hold that the trial court failed to conduct a sufficiently extensive choice of law analysis and that the trial court erred in certifying the class because the Poseys did not meet their burden of proving there are common issues. We affirm in part, reverse in part, and remand the case to the trial court for further proceedings consistent with this opinion.

**Factual Background**

The Poseys purchased a manufactured home and financed that purchase by an installment sales contract. The Poseys are Texas residents and reside in Fannin County, Texas. They signed the contract

February 5, 1999, at a mobile home dealership located in Denison, Texas. The installment sales contract obligated the Poseys to make 240 monthly payments and financed the purchase price for the manufactured home, certain of its contents, certain services, and thirty-six months of property insurance covering the manufactured home and its contents. The Poseys' contract provides: "[t]his contract is subject in whole or in part to Texas law...." [1] The contract specified the index rate and the margin [2] the Poseys were obligated to pay. The initial interest rate was 10.74 percent per year. After the purchase, the contract was assigned to Vanderbilt. Vanderbilt is a Tennessee corporation, and its headquarters are located in Tennessee.

In 2001, the Poseys received an annual notice representing that, beginning with the May 1, 2001, payment, their interest rate had been adjusted to 12.74 percent and stating that they were obligated to begin making escrow payments. The Poseys contend the contract only authorized an interest rate of 10.875 percent and that the escrow payments were not due until on or about March 1, 2002. When they purchased their home, the Poseys signed a document entitled "Initial Escrow Account Statement," which stated the Poseys were not obligated to pay into the insurance escrow until sixty days before their current policy expired. In 2002, the Poseys received another letter which they allege contained further misrepresentations. The annual notices consisted of unsigned form letters bearing the salutation "Dear Customer," and the particularized data

1. Vanderbilt asserts that this provision is contained only in certain retail installment contracts for purchases made in Texas.

2. The index rate is defined as "the monthly average yield on United States Treasury securities adjusted to a constant maturity of five years, as made available by the Federal Reserve Board." "The interest rate will equal the index rate in effect 45 days before the annual change date plus a margin of 6.29 percent (rounded to the nearest ⅛ of one percentage point) unless the interest rate caps limit the amount of change in the interest rate."

was typed into blanks in the letters. Vanderbilt contends the interest rate was higher than the rate the Poseys contend was authorized because the contract contained a "variable rate carryover provision." Vanderbilt claims the contract allows it to carry over the amount of any rate change which was not applied in the prior annual adjustment due to the one percent cap on interest rate increases. Shortly before the filing of this suit, the Poseys obtained modification of the contract, fixing their interest rate at 10.99 percent per annum.

Vanderbilt services the mortgages on thousands of manufactured houses. As of November 25, 2002, Vanderbilt serviced mortgages on over 150,000 installment sales contracts, with an aggregate dollar amount of almost five billion dollars. Customary servicing obligations include collecting and recording payments, communicating with obligors, investigating payment delinquencies, providing billing and tax records to obligors, and maintaining internal records with respect to each contract. Vanderbilt also calculates distributions to the beneficial owners of the mortgages and provides related data processing and reporting services. The majority of these installment sales contracts and loan agreements were purchased from dealers indirectly owned by Clayton Homes, Incorporated. Most of these installment sales contracts are secured by security interests in the manufactured homes and/or by liens on the real estate on which the related manufactured homes are located. Since 1989, Vanderbilt has originated variable rate installment contracts. In the 1999 fiscal year, Vanderbilt serviced approximately 11,594 variable rate contracts.

The trial court held a class certification hearing December 29, 2003. In an order signed December 31, 2003, the trial court found that the Poseys had met the requirements of Rule 42(a) and (b)(4), and certified a class under Rule 42(b)(4). In the order, the trial court concluded that Tennessee law applied to the transaction and explained how the discovery would be conducted, the trial court's procedures for mediation, and that a special master would be appointed. No findings of fact or conclusions of law were entered or requested.

Vanderbilt raises five issues on appeal. It contends the trial court erred in certifying a class without consideration and analysis of the laws of the forty-four states implicated by the residences of putative class members, in applying the TCPA to all claims, by certifying the class under Rule 42(b)(4) because no common issues exist or predominate, by certifying a class with the Poseys as representatives because they are neither typical nor adequate class representatives, and in certifying a class because a class action is not a superior method for trying these claims. The Poseys raise three issues on cross-appeal. They argue the trial court erred in denying injunctive relief under the TCPA, in reading into the statute words, terms, and conditions not in the statute, and erred in refusing to certify a class under Rule 42(b)(2).

## Standard of Review

■ We review the decision of the trial court in certifying or refusing to certify the class for abuse of discretion. *Bailey v. Kemper Cas. Ins. Co.*, 83 S.W.3d 840, 847 (Tex.App.-Texarkana 2002, pet. dism'd w.o.j.); *W. Teleservices, Inc. v. Carney*, 37 S.W.3d 36, 40 (Tex.App.-San Antonio 2000, no pet.). The trial court abuses its discretion when it does not properly apply the law to the undisputed facts, when it acts arbitrarily or unreasonably, or when its ruling is based on factual assertions unsupported by the record. *Alford Chevrolet–*

*Geo v. Jones,* 91 S.W.3d 396, 399–400 (Tex. App.-Texarkana 2002, pet. denied).

Vanderbilt argues that *Bernal* changed the standard of review to a higher standard than abuse of discretion. *See Southwestern Ref. Co. v. Bernal,* 22 S.W.3d 425, 435 (Tex.2000). *Bernal* cannot be reasonably interpreted to change the standard of review. The Texas Supreme Court in *Bernal* urged that a cautious approach to class certification is essential and rejected the "approach of certify now and worry later." *Id.* The court held that the trial court must conduct a "rigorous analysis" of whether the certification requirements have been met before ruling on class certification, but reaffirmed we should review the trial court's decision based on an abuse of discretion. *Id.* The Corpus Christi court of appeals has explicitly rejected the argument that *Bernal* created a more stringent review. *Snyder Communications v. Magana,* 94 S.W.3d 213, 223–27 (Tex.App.-Corpus Christi 2002, no pet.), *rev'd on other grounds,* No. 03–0036, 142 S.W.3d 295, 2004 Tex. LEXIS 739 (Tex. June 25, 2004). Our sister court relied on federal caselaw, which has long required federal district courts to conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. *Id.* at 224; *see* FED.R.CIV.P. 23. Federal appellate courts have held that "the term 'rigorous analysis' does not mean that a reviewing court must apply a less deferential standard of review than abuse of discretion, but rather that the trial court must exercise its discretion within the framework of the rule." *Snyder,* 94 S.W.3d at 224; *see* FED.R.CIV.P. 23; *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). The Texas Supreme Court noted in *Bernal* that Texas Rule of Civil Procedure 42 is patterned after Federal Rule of Civil Procedure 23 and that federal decisions and authorities interpreting current federal class action requirements are persuasive authority. *Bernal,* 22 S.W.3d at 433; *see Ford Motor Co. v. Sheldon,* 22 S.W.3d 444, 452 (Tex.2000). We agree with our sister court that *Bernal's* use of the term "rigorous analysis" instructs us to review the certification under an abuse of discretion standard, provided that the trial court exercised its discretion within the framework of the rule.

### Certification of a Class

 Under Rule 42 of the Texas Rules of Civil Procedure, all class actions must satisfy the following four threshold requirements: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. TEX.R. CIV. P. 42(a); *Bernal,* 22 S.W.3d at 433. In addition to the above prerequisites, the class action must satisfy at least one of the subdivisions contained in Rule 42(b).[3] *Bernal,* 22

---

**3.** The order certifying the class in this case is dated December 31, 2003. At the time this class was certified, Rule 42 contained four subdivisions. On January 1, 2004, the amendments to Rule 42(b), which only contain three subdivisions, became effective. *See* TEX.R. CIV. P. 42(b). At the time of certification, Rule 42(b)(4) read as follows:

> (4) the court finds that the questions of law or fact common to the members of the

class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation con-

S.W.3d at 433. "Courts must perform a 'rigorous analysis' before ruling on class certification to determine whether all prerequisites to certification have been met." *Id.* at 435; *see Henry Schein, Inc. v. Stromboe,* 102 S.W.3d 675, 690 (Tex.2002). This rigorous analysis includes indicating how the claims will likely be tried so that conformity with Tex.R. Civ. P. 42 can be meaningfully evaluated. *Id.* at 690–91. In conducting this analysis, courts should go "beyond the pleadings" and understand the "claims, defenses, relevant facts, and applicable substantive law" when determining whether the requirements of certification should be met. *Bernal,* 22 S.W.3d at 435. In reviewing the certification of a class, we must be certain "the trial court did not simply 'certify first' without engaging in a serious analysis of the action and the apparent propriety of certifying the class." *Alford Chevrolet–Geo,* 91 S.W.3d at 406. We are aware that "the trial court may modify the class definition or otherwise alter its ruling at any time during the proceeding should it become apparent such a change is necessary." *Id.; see Intratex Gas Co. v. Beeson,* 22 S.W.3d 398, 407 (Tex.2000).

We conclude the trial court abused its discretion in certifying the class under Rule 42(b)(4) because the Poseys have not met their burden of showing there are common issues of law or fact. We will first address why the Poseys did not show there are common issues of law. Next, we will examine why the Poseys did not meet their burden of proving there are common issues of fact. We also conclude the trial court did not abuse its discretion in refusing to certify a class under Rule 42(b)(2).

### Common Issues of Law

To determine if there are common legal issues, we must determine the applicable law. Thus, the first issue we must consider is whether the trial court erred in determining that Tennessee law applies to the claims of the entire class. The first step in the choice of law analysis is to determine if the laws of the forty-four jurisdictions differ. If the laws differ, the next step is to examine all transactions and determine if any state has the "most significant" contacts with all the transactions. The third step is to determine whether an exception or limitation applies which prevents the application of the law of the state with the "most significant" contacts. We determine the Poseys did not meet their burden of showing that the laws of the forty-four states do not conflict and did not provide the court with a sufficiently extensive choice of law analysis. Last, we will examine the remaining arguments asserted by the parties. According to Vanderbilt, a nationwide class cannot be certified as a matter of law. The Poseys argue that the "False Conflicts" doctrine requires application of Tennessee law. We reject both of these arguments.

■ Texas courts must perform the choice of law analysis before certifying a class. While in the past it was permissible to postpone choice of law analysis until after certification, the Texas Supreme Court now requires performance of choice of law analysis before a class is certified. *Compare Compaq Computer Corp. v. Lapray,* 135 S.W.3d 657, 672 (Tex.2004), *with Microsoft Corp. v. Manning,* 914 S.W.2d 602, 607 (Tex.App.-Texarkana 1995, writ

cerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the

difficulties likely to be encountered in the management of a class action.

Tex.R. Civ. P. 42(a), (b), 553–554 S.W.2d (Tex. Cases) XXXVI (1977, amended 2004).

dism'd), *and Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 650 (Tex.App.-Houston [14th Dist.] 1995, writ dism'd w.o.j.).

When determining choice of law questions, Texas courts should follow the choice of law directives of its own jurisdiction. *See Maxus Exploration Co. v. Moran Bros.*, 817 S.W.2d 50, 54 n. 6 (Tex. 1991); *Robertson v. Estate of McKnight*, 609 S.W.2d 534, 536–37 (Tex.1980). Thus, we apply Texas choice of law rules in determining whether the law of various states or Tennessee law should apply. The legal determination of which state's law applies is subject to de novo review of the record. *Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 955 S.W.2d 853, 856 (Tex. 1996) (certifying question to Supreme Court of Minnesota); *Busse v. Pac. Cattle Feeding Fund # 1, Ltd.*, 896 S.W.2d 807, 813 (Tex.App.-Texarkana 1995, writ denied); *see Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex.2000); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex.1984); *see also Huddy v. Fruehauf Corp.*, 953 F.2d 955, 956 (5th Cir.1992). However, the determination of the state contacts to be considered involves a factual inquiry which requires deference to the trial court's determination. *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204–05 (Tex.2000); *Ford Motor Co. v. Aguiniga*, 9 S.W.3d 252, 257 (Tex.App.-San Antonio 1999, pet. denied).

Traditionally, a jurisdiction's body of laws was thought to have no effect outside its own territory, but courts would recognize foreign law under the doctrine of comity or through a theory of "vested rights." *See Slater v. Mexican Nat. R.R. Co.*, 194 U.S. 120, 126, 24 S.Ct. 581, 48 L.Ed. 900 (1904); *Cal. v. Copus*, 158 Tex. 196, 309 S.W.2d 227, 229–33 (1958). However, Texas courts have abandoned the *lex loci delecti* approach in favor of the less restric-tive approach combining the methodologies of a governmental policy analysis and the "significant relationship" approach embodied in the Second Restatement of Conflicts. *See Duncan*, 665 S.W.2d at 421; *Gutierrez v. Collins*, 583 S.W.2d 312, 318–19 (Tex. 1979); *see also* RESTATEMENT (SECOND) OF CONFLICTS § 145 (1971).

The first step in deciding choice of law is whether the laws of the various jurisdictions conflict. When a party contends that the law of another jurisdiction should apply, Texas courts will first examine if the applicable laws conflict. If the laws do not conflict, there is no need to resolve the choice of law problem. *Vandeventer v. All Am. Life & Cas. Co.*, 101 S.W.3d 703, 711–12 (Tex.App.-Fort Worth 2003, no pet.); *Saint Paul Surplus Lines Ins. Co. v. Geo Pipe Co.*, 25 S.W.3d 900, 903 n. 2 (Tex.App.-Houston [1st Dist.] 2000, pet. dism'd by agr.); *see Duncan*, 665 S.W.2d at 419–21. There are no conflicts if there are no differences between the laws of the respective states concerning the issues relevant to the case. *See Duncan*, 665 S.W.2d at 419–21; *Vandeventer*, 101 S.W.3d at 711–12; *Young Ref. Corp. v. Pennzoil Co.*, 46 S.W.3d 380, 385 (Tex.App.-Houston [1st Dist.] 2001, pet. denied); *Saint Paul Surplus Lines Ins. Co.*, 25 S.W.3d at 903 n. 2. We note there is no Tennessee residence requirement in order to bring an action under the TCPA. *Steed Realty v. Oveisi*, 823 S.W.2d 195, 198 (Tenn.Ct.App.1991).

The Poseys have not shown that the laws of Tennessee and the other forty-three states do not differ. In *Henry Schein, Inc.*, the Texas Supreme Court determined that the laws of the fifty states concerning deceptive trade practices conflict. *Henry Schein, Inc.*, 102 S.W.3d at 695–96. The Texas Supreme Court's reasoning relied on the differences in the availability of exemplary damages in vari-

ous states. *Id.* We note that punitive damages may not be awarded in an action under the TCPA. *Paty v. Herb Adcox Chevrolet Co.*, 756 S.W.2d 697, 699 (Tenn. Ct.App.1988). Even if the Poseys relinquished any right to exemplary damages, they have not met their burden of showing that the laws of the forty-four states do not conflict.[4] When arguing that the laws of various jurisdictions do not conflict, the class representatives must present an "extensive analysis of state law evaluating any differences." *Lapray*, 135 S.W.3d at 672; *see Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 359 (Tex.App.-Houston [14th Dist.] 2003, no pet.). The Poseys only presented the trial court with an analysis of the laws of Texas and Tennessee. The Poseys were required to present the trial court with an extensive analysis of the laws of all forty-four states and establish that there are no conflicts of law. Since the Poseys did not present an "extensive analysis of state law evaluating any differences," the Poseys did not meet their burden of proving that the laws do not conflict.

■ If the laws differ, the next step in deciding choice of law is which state has the "most significant relationship." Choice of law in tort cases is determined by applying the "most significant relationship" analysis. For misrepresentations, the "most significant relationship" test involves three levels.

■ The first level involves the general test, which weighs the competing policy interests of the different jurisdictions. Section 6 of the Restatement provides that the factors which courts should consider include the following:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability, and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICTS § 6(2) (1971); *see Gutierrez*, 583 S.W.2d at 318–19. In the context of tort cases, the factors of the justified expectations of the parties and of certainty, predictability, and uniformity of result are of lesser importance. RESTATEMENT (SECOND) OF CONFLICTS § 148(2) cmt. b (1971).

■ The second level of analysis provides additional guidance concerning a specific area of law, which in this case is torts. While Section 6 "sets out the general principles by which the more specific rules are to be applied," Section 145 lists additional factors applicable to a tort case. *Gutierrez*, 583 S.W.2d at 318–19. The factors enumerated by Section 145 include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

---

4. Previously, this Court has held that Texas law places the burden of showing those differences on the party asserting the differences, and the other jurisdictions' laws will be presumed to be the same in the absence of evidence to the contrary. *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 613 (Tex.App.-Texarkana 1995, writ dism'd); *see Ogletree v.*

*Crates*, 363 S.W.2d 431, 435 (Tex.1963); *Osborn v. Kinnington*, 787 S.W.2d 417, 419 (Tex. App.-El Paso 1990, writ denied). However, the Texas Supreme Court has recently held that the class proponent has the burden to show that there are no conflicts. *Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 673 (Tex.2004).

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

RESTATEMENT (SECOND) OF CONFLICTS § 145(2); *see Gutierrez*, 583 S.W.2d at 319.

 The third level of guiding principles applies to a specific context within the area of law. For misrepresentation, the applicable specific context is found in Section 148 of the Second Restatement. *Lutheran Bhd. v. Kidder Peabody & Co.*, 829 S.W.2d 300, 310 (Tex.App.-Texarkana), *remanded w.r.m.*, 840 S.W.2d 384 (Tex. 1992); *see* RESTATEMENT (SECOND) OF CONFLICTS § 148 (1971). If the representations were made and received in the same state and the plaintiff's reliance occurred in that state as well, Section 148(1) creates a presumption for the application of the state's law where the representations were made and received. Section 148(1) provides as follows:

When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

RESTATEMENT (SECOND) OF CONFLICTS § 148(1). This presumption can be rebutted if another state has more significant contacts under the Section 6 analysis. *Id.* However, Vanderbilt made the alleged misrepresentations in Tennessee and the majority of the plaintiffs received the alleged misrepresentations in a different state. Thus, the presumption of Section 148(1) does not apply. The Second Restatement provides additional factors to be considered in determining the state with the "most significant contacts" as follows:

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

(b) the place where the plaintiff received the representations,

(c) the place where the defendant made the representations,

(d) the domicil, residence, nationality, place of incorporation and place of business of the parties,

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

RESTATEMENT (SECOND) OF CONFLICTS § 148(2). The comments to Section 148(2) provide that, when any two of the factors above, except domicile and state of incorporation or place of business, are located within the same state, that state will usually have the most significant contacts. Comment j to Section 148 states in its entirety:

No definite rules as to the selection of the applicable law can be stated, except in the situation covered by Subsection (1). If any two of the above-mentioned contacts, apart from the defendant's domicil, state of incorporation or place of business, are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues. So when the plaintiff acted in reliance upon the defendant's represen-

tations in a single state, this state will usually be the state of the applicable law, with respect to most issues, if (a) the defendant's misrepresentations were received by the plaintiff in this state, or (b) this state is the state of the plaintiff's domicil or principal place of business, or (c) this state is the situs of the land which constituted the subject of the transaction between the plaintiff and the defendant, or (d) this state is the place where the plaintiff was to render at least the great bulk of his performance under his contract with the defendant. The same would be true if any two of the other contacts mentioned immediately above were located in the state in question even though this state was not the place where the plaintiff received the representations.

RESTATEMENT (SECOND) OF CONFLICTS § 148 cmt. j (1971). As the comment makes clear, there are no definite rules, apart from the presumption contained in Subsection (1).

Because the Restatement instructs us that "[n]o definite rules as to the selection of the applicable law can be stated," the commentary does not create a presumption similar to Section 148(1). Further, Section 148 must be analyzed in conjunction with Section 145 and Section 6. Courts should review the respective state contacts qualitatively rather than quantitatively. *Minn. Mining & Mfg. Co.*, 955 S.W.2d at 856; *see Duncan*, 665 S.W.2d at 421. The only two jurisdictions that the record indicates the trial court considered are Texas and Tennessee. Without being presented with an analysis of the Second Restatement factors of the other forty-two states, the Poseys did not meet their burden of providing a choice of law analysis on which the trial court could determine if Tennessee has the "most significant" contacts of all of the forty-four states.

In the third step of our choice of law analysis, we must determine if any exceptions apply which prevent the application of the law of the state with the "most significant contacts." The Poseys argue that Tennessee law applies due to the Full Faith and Credit Clause of the United States Constitution and because Tennessee law does not conflict with Texas public policy.

The Poseys argue that, because the TCPA is not against Texas public policy, there is no reason not to apply the TCPA. Under the "public policy doctrine," Texas will not enforce a foreign law which is contrary to Texas public policy. If the law of the foreign jurisdiction with the most significant contacts is against "good morals or natural justice," or is "prejudicial to the general interests of our citizens," Texas courts should refuse to enforce said law. *Larchmont Farms, Inc. v. Parra*, 941 S.W.2d 93, 95 (Tex.1997); *Copus*, 309 S.W.2d at 232; *Seth v. Seth*, 694 S.W.2d 459, 463 (Tex.App.-Fort Worth 1985, no writ); *see DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 679–81 (Tex.1990). However, mere differences between Texas law and foreign law does not render the foreign law so contrary to Texas public policy that it should not be enforced. *Robertson*, 609 S.W.2d at 536–37; *Gutierrez*, 583 S.W.2d at 322; *see Castilleja v. Camero*, 414 S.W.2d 424, 427 (Tex.1967). The Poseys argue that, because the TCPA is not contrary to good morals and natural justice, Texas must apply the TCPA. This argument fails because the policy of not enforcing a law which is contrary to Texas public policy is an exception to the Texas choice of law rules, not the rule itself. The fact that the Tennessee law is not contrary to the morals, natural justice, and policy of Texas does not mean that Tennessee law applies.

■ In the alternative, the Poseys argue that Tennessee law must be applied under the Full Faith and Credit Clause. The United States Constitution places some limits on the application of Texas choice of law rules. The Full Faith and Credit Clause and the Due Process Clause require the application of the law of a state which has a "significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." [5] *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 310–13, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981); *see Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 818, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); *see also Manning,* 914 S.W.2d at 607. The application of Tennessee law is not required by the Full Faith and Credit Clause because Texas, among other states, also has significant contacts with the transaction.

Last, we reach the remaining arguments presented by the parties. We will first address Vanderbilt's contention that a nationwide class concerning deceptive trade practices cannot be certified as a matter of law. We will then address whether the "False Conflicts" analysis requires application of Tennessee law, as argued by the Poseys.

■ Vanderbilt asserts the Texas Supreme Court has held that a nationwide class concerning deceptive trade practices cannot be certified as a matter of law. A nationwide state law class action can be theoretically certified in two ways. Either the law of a single state must apply to all

of the plaintiffs' claims or the laws of the various states must be sufficiently similar that common issues of law predominate. Rory Ryan, Comment, *Uncertifiable?: The Current Status of Nationwide State–Law Class Actions,* 54 BAYLOR L.REV. 467, 468–71 & n. 6 (Spring 2002). Vanderbilt's argument is incorrect because it ignores the possibility that a nationwide class can be certified if the laws of a single state apply. The Texas Supreme Court has noted that the overwhelming majority of both state and federal courts have rejected certification of nationwide classes when the class must apply multiple states' laws. *Henry Schein, Inc.,* 102 S.W.3d at 698–99; *see Tracker Marine, L.P.,* 108 S.W.3d at 359; *see also* Rory Ryan, *supra.* In *Henry Schein, Inc.,* the Texas Supreme Court held that differences in the availability of exemplary damages in various states prevented the application of one state's law concerning deceptive trade practices. *Henry Schein, Inc.,* 102 S.W.3d at 695–96; *see Tracker Marine, L.P.,* 108 S.W.3d at 352–54. Since the laws conflict, the Texas Supreme Court held that a nationwide class could not be certified. *Henry Schein, Inc.,* 102 S.W.3d at 695–96. However, *Henry Schein, Inc.* only addressed the argument that a single state's law could apply because the laws of the various jurisdictions did not conflict. *Id.* All of the cases cited by Vanderbilt concern the situation where the class proponents are contending that the laws of the various states do not conflict and thus a single state's law

5. At one time the Supreme Court utilized a more stringent "weighing-of-interests" requirement, which it has now abandoned. *Compare Allstate Ins. Co. v. Hague,* 449 U.S. 302, 310–13, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981), *with Alaska Packers Ass'n v. Indus. Accident Comm'n,* 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935). *See Franchise Tax Bd. v. Hyatt,* 538 U.S. 488, 495, 123 S.Ct. 1683,

155 L.Ed.2d 702 (2003); *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 818, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). *But see Hughes v. Fetter,* 341 U.S. 609, 613, 71 S.Ct. 980, 95 L.Ed. 1212 (1951) (Full Faith and Credit Clause requires application of foreign law if forum state's policy is not actually antagonistic).

can be applied.[6] However, Vanderbilt's argument ignores the second method by which a nationwide class can be certified— when the law of one state applies to all of the transactions. If a single state has the "most significant" contacts to all of the transactions involving deceptive trade practices, a nationwide class can be certified. *Grant Thornton, LLP v. Suntrust Bank,* 133 S.W.3d 342, 361 (Tex.App.-Dallas 2004, pet. filed); *Nat'l W. Life Ins. Co. v. Rowe,* 86 S.W.3d 285, 301 (Tex.App.-Austin 2002, pet. filed).

In order for a class to be certified because only one state's law applies, a single state must have the most significant contacts for all of the transactions. Choice of law must be determined for each individual transaction. If the same state has the most significant contacts for all of the transactions, the class can be certified. This will be a rare circumstance. In most cases involving deceptive trade practices, analysis under the Second Restatement will result in many states that have the most significant contacts to the various transactions. The Fourteenth Court of Appeals decision in *Tracker Marine* illustrates the more common situation. *Tracker Marine* involved a class certified for misrepresentations made in the sale of boats. The company that manufactured the boats was domiciled in Missouri. *Tracker Marine, L.P.,* 108 S.W.3d at 356. The court held that the Second Restatement "suggest[s] an analysis that points well away from Missouri." *Id.* Thus, there were many states that had the "most signifi-

cant" contacts to the various transactions of the class, which prevented the class from being manageable. *Id.* at 359–63. However, if the Second Restatement indicates that a single state has the "most significant" contacts to all of the transactions, a nationwide class could be certified.

The Poseys contend there is no conflict between the laws of Tennessee and Texas because all of Texas' interests are protected under Tennessee law. The Poseys' argument is essentially a "False Conflicts" analysis. At least one Texas court has held that no choice of law analysis is required when the conflict is a "false conflict." *See Aguiniga,* 9 S.W.3d at 261.

 The "False Conflicts" analysis was developed by Brainerd Currie,[7] who believed that the process of choosing the governing law ought to be analyzed according to the purposes behind that law. James P. George, *False Conflicts and Faulty Analyses: Judicial Misuse of Governmental Interests in the Second Restatement of Conflicts of Laws,* 23 Rev. of Litig. 489, 511 (Summer 2004). Under the "False Conflicts" approach, a false conflict occurs when only one state has a true interest in the dispute. *Id.* at 493. The drafters of the Second Restatement combined aspects of several choice of law methodologies in drafting the Second Restatement. *Id.* at 519. While the "False Conflicts" doctrine has important influence in the governmental policy analysis contained in the Second Restatement, we do not believe it should be used to determine

---

6. *Henry Schein, Inc. v. Stromboe,* 102 S.W.3d 675, 698–99 (Tex.2003); *see Tracker Marine, L.P. v. Ogle,* 108 S.W.3d 349, 359 (Tex.App.-Houston [14th Dist.] 2003, no pet.); *see also Gen. Elec. Co. v. Jewell,* No. 14–02–00796–CV, 2003 WL 22176623, 2003 Tex.App. LEXIS 8184 (Tex.App.-Houston [14th Dist.] Sept. 23, 2003, no pet.) (mem.op.) (not designated for publication).

7. Brainerd Currie was a professor at the University of Chicago Law School and had previously been the dean of the law school at the University of Pittsburgh. Ronald H. Silverman, Article, *Weak Law Teaching, Adam Smith and a New Model of Merit Pay,* 9 Cornell J.L. & Pub. Pol'y 267, 271 n. 6 (Winter 2000).

whether a conflict exists. If the "False Conflicts" doctrine is used to determine whether a conflict exists, it may very well supplant the Second Restatement as the test to determine the conflicts of law. We note that the governmental interest factor is an important component of the test in the Second Restatement, but it must be considered in connection with the other factors contained in the Restatement. As suggested by the Texas Supreme Court, a conflict exists when there is a difference between the laws of the relevant jurisdictions. *See Duncan,* 665 S.W.2d at 419–21. Further, even if the "False Conflicts" doctrine applies, the Poseys have not shown that only Tennessee has an interest in the litigation. While the Poseys presented the trial court with the interests of Texas and Tennessee, they failed to present the trial court with any of the interests of the other forty-two states. The Poseys must show there is no conflict of interest between all forty-four states, even if the "False Conflicts" analysis applied under Texas choice of law rules.

In summary, a nationwide class can be certified if a single state has the most significant relationship to all of the transactions. Although the Second Restatement is influenced by the "False Conflicts" analysis, the Second Restatement, rather than the "False Conflicts," is the standard for choice of law in Texas. The trial court's conclusion that Tennessee had the most significant contacts requires a more extensive examination of the governmental interests of the forty-four states.[8] The Full Faith and Credit Clause does not require the application of Tennessee law. Last, the fact that Tennessee law is not contrary to Texas public policy does not require the application of Tennessee law.

## Common Issues of Fact

The second principal issue in our analysis is whether the trial court erred in concluding there are common issues of fact. Vanderbilt argues that the trial court's certification violates the requirements of commonality, typicality, superiority, and adequate representation; that the common issues do not predominate; that the Poseys' allegations are not sufficient to allege a cause of action under the TCPA; and that the trial plan is deficient. We conclude the Poseys have not shown there are common issues. Since the failure to prove commonality is dispositive, we decline to determine the remainder of Vanderbilt's complaints.

The Texas Supreme Court has noted that the threshold of commonality is not high. *Union Pac. Res. Group, Inc.,* 111 S.W.3d 69, 74 (Tex.2003); *see Phillips Petroleum Co. v. Bowden,* 108 S.W.3d 385, 394 (Tex.App.-Houston [14th Dist.] 2003, pet. filed). Commonality does not require that "all or even a substantial portion of the legal and factual questions be common to the class." *Nissan Motor Co. v. Fry,* 27 S.W.3d 573, 588 (Tex.App.-Corpus Christi 2000, pet. denied). Class certification requires at least one issue of law or fact "that inheres in the complaints of all class members." *Hankins,* 111 S.W.3d at 74 (quoting *Bowden,* 108 S.W.3d at 394). A common question exists when the answer

---

8. We note that the Texas Supreme Court has stated that redefining a class may be preferable to decertification in order to conserve judicial and litigant resources. *Intratex Gas Co. v. Beeson,* 22 S.W.3d 398, 407 (Tex.2000). The trial court did compare the governmental interests of Texas and Tennessee, and concluded that Tennessee has the most signifi-

cant contacts. Because we have previously determined the Poseys did not prove that common issues of fact predominate, we will not examine whether we could redefine the class only as to Texas residents or whether the trial court was correct in determining that Tennessee has the most significant contacts.

as to one class member is the same as to all. *Spera v. Fleming, Hovenkamp & Grayson, P.C.*, 4 S.W.3d 805, 810 (Tex. App.-Houston [14th Dist.] 1999, no pet.); *Sun Coast Res., Inc. v. Cooper*, 967 S.W.2d 525, 532 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd w.o.j.). The common issue must be "applicable to the class as a whole" and must be "subject to generalized proof." *Hankins*, 111 S.W.3d at 74 (quoting *Nichols v. Mobile Bd. of Realtors, Inc.*, 675 F.2d 671, 676 (5th Cir.1982)). This Court has held that a single common question can be sufficient to show commonality. *Manning*, 914 S.W.2d at 611; *Bailey*, 83 S.W.3d at 853.

■■■ The Texas Supreme Court has held that "actual, not presumed, conformance with [Rule 42] remains ... indispensable." *Bernal*, 22 S.W.3d at 435 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). A trial court cannot rely on the mere assurances of counsel that any problems with predominance or superiority can be overcome. *Bernal*, 22 S.W.3d at 435. "Compliance with Rule 42 must be demonstrated; it cannot merely be presumed." *Henry Schein, Inc.*, 102 S.W.3d at 691. A party must do more than merely allege that the action meets the requirements of certification; a party must produce at least some evidence supporting certification. *Lebron v. Citicorp Vendor Fin., Inc.*, 99 S.W.3d 676, 679 (Tex.App.-Eastland 2003, no pet.) (certification improper in the absence of any evidence supporting certification). Although the class proponent is not required to make a prima facie case or make an extensive evidentiary showing, they must do more than "merely allege that the requirements have been met and must at least show some facts to support certification." *Spera*, 4 S.W.3d at 810; *see Lebron*, 99 S.W.3d at 679; *Graebel/Houston Movers, Inc. v. Chastain*, 26 S.W.3d 24, 29 (Tex.App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.).

■■■ The Poseys have not shown that a single common issue of law or fact exists. As discussed above, the trial court erred in concluding the law of Tennessee applies in the absence of a more extensive analysis. Therefore, the Poseys have not shown that there are common issues of law. *See Fry*, 27 S.W.3d at 588 (because not all class members could pursue the common issues of law, commonality was lacking). In addition, the Poseys have not shown that there are common issues of fact. The Poseys introduced evidence of the number of variable rate mortgages and the breakdown of the interest rates as specified in Vanderbilt's prospectus filed with the SEC. In their motion for certification of a class, the Poseys specified fifteen issues which they alleged were common issues. However, all of these alleged common issues required Vanderbilt to have made a misrepresentation to the various members of the class. The trial court was not presented with any evidence that any members of the class received misrepresentations other than the Poseys. The only evidence of misrepresentations was the letters received by the Poseys. Because of the vast number of mortgages managed by Vanderbilt and the fact the letter is clearly a form letter, the Poseys contend the trial court did not abuse its discretion by inferring that the letters were computer-generated and that the unnamed class members received misrepresentations. Compliance with the certification requirements must be actual, not presumed. *Bernal*, 22 S.W.3d at 435. Because the Poseys did not present the trial court with any evidence that similar misrepresentations were made to other members of the class, they have not shown that there are common issues. Without some evidence of misrepresentations made to other members of the class, the Poseys

have not met their burden. Although the letter is clearly a form letter, the conclusion that the misrepresentations were made to a class requires the court to presume the fact to be proved—that a class received misrepresentations. Since the Poseys have failed to prove there is at least one common issue of law or fact, they have failed to meet the requirement of commonality.

The parties are entitled to some discovery before the certification hearing. We note that courts often limit discovery pending class determination, but litigants will generally need some discovery to effectively support or oppose a class-certification motion. *In re Alford Chevrolet–Geo,* 997 S.W.2d 173, 181 (Tex. 1999). The parties are not limited to admissible or formal evidence at a certification hearing. *St. Louis Southwestern Ry. Co. v. Voluntary Purchasing Groups, Inc.,* 929 S.W.2d 25, 30 (Tex.App.-Texarkana 1996, no writ). Although the certification in some classes can be made on the basis of the pleadings, in many cases discovery must be conducted to establish commonality of issues, typicality of claims, or predominance. *Alford Chevrolet–Geo,* 997 S.W.2d at 182. "Such discovery will frequently be enmeshed with the merits." *Id.* Generally, the quantity of discovery that is warranted to determine any certification questions is within the trial court's discretion. *Id.* Factors which the trial court should consider in determining the scope of precertification discovery include the "importance, benefit, burden, expense, and time needed to produce the proposed discovery." *Id.* "Other factors include whether the individual claims are large enough to be worth pursuing if the class is not certified, and if so, whether the proposed discovery would relate to those individual claims." *Id.*

At oral argument, the Poseys argued that certification cannot inquire into the merits because a class cannot be defined on the basis of liability. The Poseys argue that an inquiry into the merits would create a prohibited fail-safe class. A class must be precisely defined by reference to objective criteria. *Beeson,* 22 S.W.3d at 403; *see Chastain,* 26 S.W.3d at 29–30. The class should not be defined by criteria that require an evaluation of the merits of the case. *Beeson,* 22 S.W.3d at 404. "By evaluating the merits at the certification stage, the trial court would allow a representative plaintiff to secure the benefits of proceeding with a class-action suit without first satisfying the requirements for maintaining one." *Id.* A "fail-safe" class is a class whose definition is "based on resolving the ultimate liability issue" and the class members are "bound only by a judgment favorable to plaintiffs but not by a judgment favorable to defendants." *Id.* at 404–05. The trial court defined the class as follows:

> Those persons to whom Vanderbilt Mortgage & Finance, Incorporated, sent a letter since March 25, 2001, stating, among other things, the interest rate and the payment that was due after an adjustment in the interest rate was called for by their installment sales contract.

This definition does not create a prohibited fail-safe class. The class is defined by objective criteria which is not based on resolving an ultimate issue. The class will remain the same regardless of whether the ultimate determination results in a conclusion that the letters contained misrepresentations. Although a class definition should not depend on an evaluation of the merits, the trial court should consider the merits in evaluating whether the class certification requirements of commonality, typicality, superiority, and predominance

have been met. *See Hankins,* 111 S.W.3d at 72–73.

■ In the past, this Court has held that class certification should be decided with little or no attention to the merits. *See Manning,* 914 S.W.2d at 607. In *Hankins,* the Texas Supreme Court rejected this view and held that an analysis of the merits of claims or defenses is relevant in certifying a class. The court noted that "such issues as commonality, typicality, superiority, and predominance are at least tangentially related to the merits." *Hankins,* 111 S.W.3d at 72 (quoting *Alford Chevrolet–Geo,* 997 S.W.2d at 182). The trial court may look beyond the pleadings in determining whether the certification requirements have been met. *Beeson,* 22 S.W.3d at 404. While the trial court's analysis should be "far less searching" than a trial on the merits, the trial court should consider merits in evaluating whether the class certification requirements of commonality, typicality, superiority, and predominance have been met. *Hankins,* 111 S.W.3d at 72–73. In reviewing the certification of a class, we must be certain "the trial court did not simply 'certify first' without engaging in a serious analysis of the action and the apparent propriety of certifying the class." *Alford Chevrolet–Geo,* 91 S.W.3d at 406.

■ A trial court abuses its discretion if it certifies a class based on mere speculation. *Remington Arms Co. v. Luna,* 966 S.W.2d 641, 644 (Tex.App.-San Antonio 1998, pet. denied). Because the trial court's decision required it to presume that the other members of the class received misrepresentations, it abused its discretion in certifying the class. Because we have determined that the requirement of commonality has not been met, we decline to determine Vanderbilt's remaining arguments.

### Availability of Injunctive Relief and Certification Under Rule 42(b)(2)

■ The Poseys complain on their cross-appeal the trial court erred in refusing to certify a class under Rule 42(b)(2). They argue the trial court erred by reading into the Tennessee statute conditions that were not part of the statute, by refusing to implement the scheme of remedies available under the TCPA, and by ruling on the merits of the case. We conclude the trial court did not abuse its discretion in refusing to certify the class because the Poseys failed to show commonality.

The TCPA provides that any practice prohibited by the TCPA can be enjoined. The statute provides that "[w]ithout regard to any other remedy or relief to which a person is entitled, anyone affected by a violation of this part may bring an action … to enjoin the person who has violated … this part;…." TENN.CODE ANN. § 47–18–109(b). The remedies afforded by the TCPA are cumulative, and a consumer is not required to choose among them. TENN.CODE ANN. § 47–18–112.

A Rule 42(b)(2) class is intended to provide injunctive or declaratory relief for the class. Rule 42(b)(2) provides that:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

TEX.R. CIV. P. 42(b)(2). The Texas rule was derived from the Federal Rules of Civil Procedure, Rule 23(b)(2), and reads identically. *Lapray,* 135 S.W.3d at 664.

"Subdivision (b)(2) was added to [the federal rules] in 1966 primarily to facilitate the bringing of class actions in the civil rights area." *Id.* at 663–71 (quoting *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 506 n. 6 (5th Cir.1981)).

As discussed above, the Poseys failed to meet the commonality requirement. A Rule 42(b)(2) class must meet the requirements of Rule 42(a) and the requirement of "cohesiveness." *Lapray*, 135 S.W.3d at 671. Since the failure to show commonality is dispositive, we decline to address the remainder of the arguments concerning the Rule 42(b)(2) class.

## Conclusion

Because the Poseys failed to show there were common issues of fact and failed to present the trial court with an extensive choice of law analysis, the trial court abused its discretion in certifying the class under Rule 42(b)(4). The trial court did not abuse its discretion in refusing to certify a class under Rule 42(b)(2). We affirm the refusal to certify a class under Rule 42(b)(2), reverse the certification of the class under Rule 42(b)(4), and remand this case to the trial court for further proceedings consistent with this opinion.