

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00117-CV

_____

LIBERTY MUTUAL INSURANCE COMPANY, Appellant

V.

TRANSIT MIX CONCRETE & MATERIALS COMPANY, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 10C0001-102

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Robert Smith, an employee of Texarkana Construction Company (Texarkana Construction), was injured January 4, 2008, while working on a construction job at the Texarkana Regional Airport, which is located in Arkansas, just across the Texas border. The injury to Smith, a concrete finisher, occurred as he was holding the chute of a concrete mixer truck owned and operated by Transit Mix Concrete and Materials Company (Transit Mix), which was delivering concrete to the job site. Smith indicated that the driver of the truck negligently caused his injuries when the driver failed to signal Smith before he unlocked the chute. Upon being unlocked, the chute swung into Smith, dragging him into a nearby "concrete lay-down machine," causing injury to Smith's back and left leg. At the time the injury occurred, Smith was a Texas resident and Texarkana Construction Company was a Texas entity. Liberty Mutual Insurance Company (Liberty Mutual), Texarkana Construction's worker's compensation insurer, paid $91,155.39 in medical bills incurred by Smith as a result of the injuries he sustained.

Two lawsuits were filed against Transit Mix. One was filed January 4, 2010, by Liberty Mutual in Bowie County, Texas.[1] Subsequent to the filing of the suit by Liberty Mutual (after the suit might have been barred by the applicable Texas statute of limitations but before recovery would have been barred under Arkansas law), Smith filed a lawsuit in Miller County, Arkansas, the county of the accident site where he was injured.[2] In March 2011, Transit Mix filed a motion

---

[1]In Texas, subrogation claims accrue "at the same time the employee's action against the third party accrues." *Guillot v. Hix*, 838 S.W.2d 230, 235 (Tex. 1992). We do not express any opinion concerning when the subrogation claim accrues under Arkansas law.

[2]We note Smith, faced with the denial of a continuance, later filed a non-suit and then refiled the lawsuit within a year. The parties agree that Smith has complied with Arkansas procedural law including the statute of limitations and the permissible refiling within a year after a nonsuit.

in Liberty Mutual's Texas suit seeking to have the suit dismissed pursuant to the doctrine of forum non conveniens. After pleading responses and after a hearing, the trial court granted Transit Mix's motion and dismissed Liberty Mutual's suit. It is from that order of dismissal that Liberty Mutual has appealed.

"'The doctrine of *forum non conveniens* is an equitable doctrine exercised by courts to resist imposition of an inconvenient jurisdiction on a litigant, even if jurisdiction . . . would not violate due process.'" *Exxon Corp. v. Choo*, 881 S.W.2d 301, 302 n.2 (Tex. 1994) (quoting *Sarieddine v. Moussa*, 820 S.W.2d 837, 839 (Tex. App.—Dallas 1991, writ denied)).

On appeal, Liberty Mutual maintains that the dismissal of its lawsuit was error claiming that (1) Transit Mix's motion to dismiss was not timely, (2) Arkansas does not provide an adequate forum to adjudicate the claims, (3) Texas has the most significant contacts with the case and is, therefore, the proper forum, (4) Bowie County, Texas, (not Miller County, Arkansas) has the dominant jurisdiction, and (5) Texas Civil Practice and Remedies Code Section 71.051(b) prohibits the dismissal.

## I.   Do Statutory or Common Law Rules Dictate Application of Forum Non Conveniens?

The parties disagree as to the rules which govern the disposition of the question in this case. One side claims that statutory rules govern the forum non conveniens issue while the other maintains that common law rules apply.[3] Section 71.051 of the Texas Practice and Remedies Code applies to personal injury and wrongful death actions. TEX. CIV. PRAC. & REM. CODE ANN.

---

[3]As noted by the Texas Supreme Court, Texas statutory forum non conveniens has "'deep roots in the common law.'" *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 32 (Tex. 2010) (per curiam) (quoting *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 675 (Tex. 2007) (orig. proceeding) (plurality opinion)).

3

§ 71.051 (West 2008). On the one hand, Liberty Mutual argues that this claim should be governed by Section 71.051 because the underlying claim is a personal injury claim; on the other hand, Transit Mix argues that since the personal injury claim has been filed in Arkansas, this lawsuit does not concern a personal injury and the common law should apply.

Transit Mix concedes that Liberty Mutual's claim is a derivative claim. "There is but one cause of action for an employee's injuries . . . ." *Franks v. Sematech, Inc.*, 936 S.W.2d 959, 960 (Tex. 1997) (per curiam) (concluding employee could intervene even after limitations had run). Although the insurance carrier can assert its subrogation claim independently of the employee, its claim is still derivative of the employee's claim. *Id.* Thus, in this case, there is only one cause of action: Smith's personal injury cause of action. Although Liberty Mutual's subrogation claim can be brought independently, its claim would not exist apart from the injury and its ability to recover is derivative of the personal injury cause of action.

Because Liberty Mutual's subrogation claim is derivative of Smith's personal injury cause of action, this lawsuit is a personal injury lawsuit and is subject to the rules promulgated by statute,[4] not by common law rules.

## II.     Findings of Fact Are Implied

We note that although Section 71.051 requires the trial court to issue findings of fact and conclusions of law, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(f), the record provided to us contains no such findings and conclusions. It also appears that neither a request for findings

---

[4]TEX. CIV. PRAC. & REM. CODE ANN. § 71.051.

4

of fact nor a request for past-due findings of fact was filed.[5] Therefore, any error regarding the trial court's failure to file findings of fact has been waived. *See Curtis v. Comm'n for Lawyer Discipline*, 20 S.W.3d 227, 232 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Betts v. Reed*, 165 S.W.3d 862, 867 (Tex. App.—Texarkana 2005, no pet.). In the absence of findings of fact and conclusions of law, we imply that the trial court found all facts necessary to support its decision so long as they are also supported by the evidence. *BMC Software Belg.*, *N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *see Betts*, 165 S.W.3d at 867. Even so, the validity of implied findings may still be challenged on appeal for want of legal and factual sufficiency when the appellate record includes the reporter's and clerk's records. *BMC Software*, 83 S.W.3d at 795; *Betts*, 165 S.W.3d a 867.

## III. The Timeliness of Transit Mix's Motion to Dismiss Was Not Preserved for Review

Liberty Mutual complains, in its first issue, that Transit Mix failed to file its motion to dismiss based on forum non conveniens in a timely manner, claiming that Texas Civil Practice and Remedies Code Section 71.051(d) and Rule 86 of the Texas Rules of Civil Procedure mandate that Transit Mix's motion be filed within 180 days of Transit Mix's answer. Transit Mix responds that any such error has not been preserved for appellate review.[6] Because Liberty Mutual failed to raise this issue at the trial level, we determine that it failed to preserve this error for our review.

---

[5]To the extent the trial court's order can be construed as containing findings of fact and conclusions of law, we cannot consider them. Findings of fact rendered in the body of a judgment cannot be considered on appeal. *See* TEX. R. CIV. P. 299a ("Findings of fact shall not be recited in a judgment."); *Sherer v. Sherer*, 393 S.W.3d 480, 484 n.7 (Tex. App.—Texarkana 2013, pet. denied).

[6]Transit Mix argues further that because the motion was brought under the common law, the motion is timely. As discussed above, the motion was governed by statutory law.

In its reply brief, Liberty Mutual argues that its failure to perfect error is not fatal to its complaint because the error is "systemic." It goes on to urge our adoption of the three categories of error preservation adopted by the Texas Court of Criminal Appeals in *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993), *modified on other grounds by Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (Except for structural errors, "no error . . . is categorically immune to a harmless error analysis."). Liberty Mutual espouses the proposition that this Court applied criminal error preservation standards to a civil case in *Suggs v. Fitch*, 64 S.W.3d 658 (Tex. App.—Texarkana 2001, no pet.), wherein this Court held that the failure to request the jury to be polled waived the error. Liberty Mutual, based on its interpretation of *Suggs*, argues that timeliness is a waivable-only right because it is a mandatory statutory requirement.[7]

We disagree that *Suggs* purports to adopt standards set out by the Texas Court of Criminal Appeals for criminal cases. *Suggs* relies entirely on civil cases and applies civil standards, the only support to Liberty Mutual's argument being that this Court in *Suggs* used the word "waiver." Courts, when discussing error preservation, sometimes employ the word "waiver" as a synonym for both "forfeit" and the phrase "failure to preserve error." Whereas *Marin* assigned specific and distinct meanings to waiver and forfeit, courts still occasionally use the words synonymously—particularly in the context of civil cases where the *Marin* categories

---

[7]We note that many mandatory statutory requirements can be forfeited under the *Marin* error preservation rules. *See Marin*, 851 S.W.2d at 279 ("All but the most fundamental rights are thought to be forfeited if not insisted upon by the party to whom they belong" including "[m]any constitutional rights."). In the criminal context, absolute or "systemic" rights are generally limited to such issues as legal sufficiency, jurisdictional errors, and separation of powers issues. *See Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002); *see also Moff v. State*, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004).

6

are inapplicable. In *Suggs* (as well as the cases cited as authority in it), the Court merely uses "waiver" as a synonym for "forfeit." *See id.* at 660. We decline to extend the *Marin* categories of error preservation to civil cases not involving juvenile delinquency determinations.[8]

Liberty Mutual alternatively argues that the error is fundamental. We note that Texas jurisprudence significantly limits the fundamental error doctrine. *Rittenhouse v. Sabine Valley Ctr. Found., Inc.*, 161 S.W.3d 157, 166 (Tex. App.—Texarkana 2005, no pet.). "Fundamental error survives today in those rare instances in which the record shows the court lacked jurisdiction or that the public interest is directly and adversely affected as that interest is declared in the statutes or the Constitution of Texas." *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982) (per curiam); *see Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006). Liberty Mutual's complaints regarding this issue fail to affect a public interest so significant that fundamental error review has been recognized. *See Ramsey v. Dunlop*, 205 S.W.2d 979, 984 (Tex. 1947) (recognizing election contest as example of error directly and adversely affecting interest of public generally). "Defects in procedure will rarely constitute fundamental error . . . ." *Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 395 (Tex. 1993) (Gonzalez, J., concurring). Because the face of the record reflects neither a lack of jurisdiction nor a direct and adverse effect on a significant public interest, we reject Liberty Mutual's argument that the error was fundamental.

---

[8]We note that the Texas Supreme Court has utilized the *Marin* error preservation categories in juvenile delinquency cases characterized as quasi-criminal. *See In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999).

Liberty Mutual failed to preserve error, if any, for appellate review concerning whether the motion for forum non conveniens was timely filed. *See* TEX. R. APP. P. 33.1. We overrule Liberty Mutual's first issue.

## IV.  Arkansas Has the Most Significant Relationship

In its third issue, Liberty Mutual argues that Texas Law should apply because at the time that Smith suffered the injury giving rise to these claims, all of the interested parties were Texas residents. Transit Mix, consistent with its trial argument, insists that a forum non conveniens argument does not require a decision regarding which State's law applies to this case, but it argues alternatively that Arkansas has a greater interest than Texas. Transit Mix emphasizes that the injury occurred in Arkansas and that Smith is now an Arkansas resident having moved from Texas since the incident occurred. Neither party argues that Texas law should apply to only part of the lawsuit while Arkansas law applies to the rest of the lawsuit. Therefore, we will limit our analysis to whether Texas law should govern the entire case.

We disagree with Transit Mix that this issue is a non sequitor that does not require resolution in a forum non conveniens analysis. The Texas Supreme Court has recognized a relationship between choice of law, on the one hand, and forum non conveniens, on the other. *See Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 680–82 (Tex. 2006) ("On occasion, comity and choice of law may suggest that a Texas court should dismiss a claim in favor of a foreign forum under principles of forum non conveniens."). Further, the fifth statutory factor of Section 71.051 requires consideration of whether the forum is at home with the law that governs the case and, therefore, whether a choice of law analysis is necessary. *See Schippers v. Mazak*

8

*Props., Inc.*, 350 S.W.3d 294, 300 (Tex. App.—San Antonio 2011, pet. denied); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b)(5).

Unless the contacts raise disputed issues of fact, a choice of law analysis is a question of law to be reviewed de novo. *Sonat Exploration Co. v. Cudd Pressure Control*, *Inc*., 271 S.W.3d 228, 231 (Tex. 2008); *see Minnesota Mining & Mfg. Co. v. Nishika Ltd.*, 955 S.W.2d 853, 856 (Tex. 1996) (per curiam) (question of law to be reviewed de novo); *Vanderbilt Mortg. & Fin.*, *Inc. v. Posey*, 146 S.W.3d 302, 313 (Tex. App.—Texarkana 2004, no pet.). Giving deference to any implied findings of fact, we review this issue de novo.

Despite the fact that the injuries were sustained in another state, a personal injury lawsuit can be tried in Texas. The Texas Civil Practice and Remedies Code specifically permits such a lawsuit if the law of Texas or the foreign state provide a cause of action, the action is begun within the time provided by Texas law, and the action is begun within the time provided by the laws of the foreign state. TEX. CIV. PRAC. & REM. CODE ANN. § 71.031 (West 2008); *Owens Corning v. Carter*, 997 S.W.2d 560, 573 (Tex. 1999) (Section 71.031 is "essentially a codified choice-of-law rule governing the timeliness of actions."). In deciding which state's law should apply, we apply Texas' choice of law rules. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.031(b).

Historically, a jurisdiction's body of laws was thought to have no effect outside its own territory, but courts would recognize foreign law, either under the doctrine of comity or through a theory of "vested rights." *See Slater v. Mexican Nat'l R.R. Co.*, 194 U.S. 120, 126 (1904); *Cal. v. Copus*, 309 S.W.2d 227, 229–33 (Tex. 1958). Texas courts have abandoned the *lex loci*

9

*delecti* (application of the law prevailing where the injury occurred) approach in favor of the less restrictive approach combining the methodologies of a governmental policy analysis and the "most significant relationship" approach embodied in the Second Restatement of Conflict of Laws. *See Gutierrez v. Collins*, 583 S.W.2d 312, 314 (Tex. 1979); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971); *see also Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000).

A preliminary step in deciding choice of law is to determine whether the laws of the various jurisdictions conflict. *Posey*, 146 S.W.3d at 313; *see Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 202 S.W.3d 901, 905 (Tex. App.—Texarkana 2006), *aff'd by*, 271 S.W.3d 228, 231 (Tex. 2008). Liberty Mutual and Transit Mix agree that there is a difference in the laws of the two states because Arkansas courts apply the "made whole" doctrine to all subrogation claims[9] while Texas worker's compensation claims are governed by statutes which provide that the insurance carrier's subrogation interest will be paid first and the injured worker receives the remainder. *See* TEX. LAB. CODE ANN. § 417.001(b) (West 2006). We agree with the parties that the laws of Texas and Arkansas differ to the effect that the outcome to the parties could be substantially different from one state to the other.

---

[9]The parties agree that Arkansas applies the "made whole" doctrine to subrogation claims. *See Riley v. State Farm Mut. Auto. Ins. Co.*, 2011 Ark. 256 at 12, 381 S.W.3d 840, 848 ("Absent an agreement or settlement between the parties, an insurer's right to subrogation does not accrue until there has been a legal determination by a court that the insured has been made whole."); *Franklin v. Healthsource of Ark.*, 328 Ark. 163, 169, 942 S.W.2d 837, 840 (1997) ("no distinction need be made between equitable and conventional rights of subrogation"); *Shelter Mut. Ins. Co. v. Bough*, 310 Ark. 21, 28, 834 S.W.2d 637, 641 (1992) ("[W]hile the general rule is that an insurer is not entitled to subrogation unless the insured has been made whole for his loss, the insurer should not be precluded from employing its right of subrogation when the insured has been fully compensated and is in a position where the insured will recover twice for some of his or her damages.").

Next, we should determine whether the "most significant relationship" lies with Texas or with Arkansas. For personal injury lawsuits, the "most significant relationship" test involves three levels. The first level, as stated in Section 6 of the Restatement of Conflict of Laws, involves the general test: the weighing of the competing policy interests of the different jurisdictions. *Posey*, 146 S.W.3d at 314. Section 6 requires consideration of

 (a) the needs of the interstate and international systems,
 (b) the relevant policies of the forum,
 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
 (d) the protection of justified expectations,
 (e) the basic policies underlying the particular field of law,
 (f) certainty, predictability and uniformity of result, and
 (g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6) (1971); *see Gutierrez*, 583 S.W.2d at 319 (adopting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6).

The second level of analysis[10] provides additional guidance concerning a specific area of law. *Posey*, 146 S.W.3d at 314. The case before us would involve the law of torts. While Section 6 "sets out the general principles by which the more specific rules are to be applied," Section 145 provides a more specific rule applicable to a tort case. *Gutierrez*, 583 S.W.2d at 318–19. Section 145 emphasizes the following four factors:

 (a) the place where the injury occurred,
 (b) the place where the conduct causing the injury occurred,
 (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and

---

[10]Although Liberty Mutual is a worker's compensation carrier, Liberty Mutual has not argued employer immunity is an issue. *See Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 206 (Tex. 2000) (considering Section 184 of the Second Restatement of Conflict of Laws when employer immunity was an issue). Although Liberty Mutual cites *Hughes*, it only cites Hughes for the Section 6 general factors and does not discuss the worker's compensation section of the *Hughes* opinion.

11

(d)      the place where the relationship, if any, between the par[ties] is centered.

*Id*. at 319 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145).

Another level of analysis provides guiding principles for a specific context within the area of law.   For personal injury lawsuits, this level is governed by Section 146 of the Restatement.  *See Enter. Prods. Partners*, *L.P. v. Mitchell*, 340 S.W.3d 476, 480 (Tex. App.— Houston [1st Dist.] 2011, pet. abated); *Ford Motor Co. v. Aguiniga*, 9 S.W.3d 252, 260 (Tex. App.—San Antonio 1999, pet. denied).  Section 146 provides:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 146.

While Liberty Mutual stresses that the place the injury occurred is the sole contact with Arkansas, Transit Mix contravenes that by urging us to consider the fact that Smith, the injured party, now resides in Arkansas.  We disagree with Transmit Mix on this point.  "[I]t is the plaintiff's residence at the time of the injury, not the time of filing, that is relevant."  *Tullis v. Georgia-Pacific Corp*., 45 S.W.3d 118, 127 (Tex. App.—Fort Worth 2000, no pet.).  At the time of the injury, Smith was a Texas resident and Texarkana Construction was a Texas corporation.  Transit Mix had a place of business in Texas.  Finally, as noted by Liberty Mutual, the injury occurred while Smith was working for a Texas company and Smith obtained benefits under a Texas worker's compensation policy which was administered in Texas.[11]  We agree with Liberty

---

[11]We do note that Smith received medical treatment in both Texas and Arkansas.

Mutual that the conduct causing the injury and the injury itself were the sole contacts with Arkansas.

In *Gutierrez*, the Texas Supreme Court observed that when two residents of Texas are involved in an accident in another state, the law of Texas may apply. *Gutierrez*, 583 S.W.2d at 319 (remanding personal injury suit for accident in Mexico between two Texas residents for consideration of the most significant relationship test); *see also Robertson v. Estate of McKnight*, 609 S.W.2d 534, 537 (Tex. 1980) (concluding New Mexico law should apply although accident occurred in Texas). More recently, the Texas Supreme Court has noted that Texas has an interest in protecting resident defendants from "undue liability and excessive litigation." *Torrington Co.*, 46 S.W.3d at 849–50 (Texas law should apply to military helicopter crash).

Nevertheless, the Texas Supreme Court has observed that "the number of contacts with a particular state is not determinative." *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984). The analysis of the contacts should be qualitative rather than quantitative. *Minn. Mining & Mfg. Co.*, 955 S.W.2d at 856; *see Duncan*, 665 S.W.2d at 421; *Posey*, 146 S.W.3d at 316. As noted by the Texas Supreme Court in *Gutierrez*, the application of Texas law whenever Texas residents are involved is not a foregone conclusion. *Gutierrez*, 583 S.W.2d at 319.

While the only two contacts with Arkansas are the place of the injury and the conduct causing the injury, Section 146 demonstrates that these are quite important factors. The Texas Supreme Court recognized in *Gutierrez* that the presumption of Section 146 can be overcome when both parties are Texas residents, but the Supreme Court prescribed no bright-line rule to follow.

13

Although Liberty Mutual argues that everyone involved in the controversy was a Texas resident at the time of the injury, the record does not entirely support this claim. The record supports that at that time, Smith was a Texas resident and Texarkana Construction was a Texas corporation with a primary place of business in Texas. In contrast, although both are authorized to conduct business in the State of Texas, Liberty Mutual and Transit Mix[12] are both Delaware corporations. While Texas has an interest in protecting foreign corporations with places of business in Texas, such an interest may not be as intense as the desire to provide protection to native Texas corporations as expressed in *Torrington*, 46 S.W.3d at 850. The fact that Liberty Mutual and Transit Mix are Delaware corporations decreases Texas' interest to some small degree.

Unlike the automobile accident in *Gutierrez*, 583 S.W.2d at 319, the airplane crash in *Robertson*, 609 S.W.2d at 537, or the helicopter crash in *Torrington*, 46 S.W.3d at 850, the injury-causing accident in this case occurred during construction work on a public facility. A state's interest in car and airplane accidents which do not involve any of that state's citizens will be fleeting and fortuitous at best and are somewhat transient in nature. A state's interest in an accident at a permanently based public facility that will service thousands of that state's citizens may be more profound and permanent. Because this accident occurred during construction on the Texarkana Regional Airport on the Arkansas side of the State border, Arkansas will likely have a greater interest in its disposition than it would in a car accident or aircraft crash.

---

[12]At the hearing, the parties argued Transit Mix was "situated in Dallas," was "[a] Texas defendant," and "is a Texas corporation." The pleadings, though, establish that both Liberty Mutual and Transit Mix are Delaware corporations authorized to conduct business in Texas.

14

While Arkansas public policy in this area differs from Texas public policy, we note that the difference is not severe. Texas recognizes three varieties of subrogation: equitable, contractual, and statutory. *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 648 (Tex. 2007). Texas applies the "made whole" rule to equitable subrogation. *Id.* at 650 (the terms of the contract govern contractual subrogation). The Texas Legislature recently enacted a law which governs the apportionment of recovery between the injured party and the insurance subrogee when the recovery is insufficient to make the injured party whole. *See* Act of May 17, 2013, 83d Leg., R.S., H.B. 1869, § 1 (to be codified at TEX. CIV. PRAC. & REM. CODE ANN. § 140). While we note that this bill exempts worker's compensation claims, under certain circumstances, this bill will bring Texas' subrogation recoveries closer to the "made whole" doctrine. Because the differences between each state's public policy are not profound, the Texas interest in protecting Texas companies from undue liability is not terribly compelling.

Additionally, Section 6 recognizes the protection of justified expectations as a factor to be considered. Texarkana is a community which lies astride the Texas/Arkansas border; in such a community, there is a reasonable expectation that most companies will conduct business in both states.[13] Thus, any reasonable insurance carrier could foresee the possibility that its client would conduct business in multiple states and adjust rates or terms accordingly. Due to the nature of a border community such as Texarkana, we do not believe that this case presents a circumstance where the application of Arkansas law will expose a Texas resident to undue liability. Because this liability would be a reasonable expectation, it is not an undue liability.

---

[13]We take further judicial notice of Texarkana's close proximity to the Oklahoma and Louisiana borders.

15

As recognized by Section 146 of the Second Restatement of Conflict of Laws, Arkansas (as the place of the injury and where it is alleged that tortious conduct giving rise to the injury occurred) has a significant interest. This interest is sufficient to counteract the Texas interest in protecting one Texas corporation and two foreign corporations conducting business in a Texas border community. We conclude that Arkansas law should apply.

## V.     No Abuse of Discretion in Dismissal

In its second issue, Liberty Mutual argues that the trial court erred in granting the forum non conveniens motion because Arkansas is not an adequate forum. Since 1993, personal injury lawsuits have been governed by a forum non conveniens statute that requires a trial court to consider the following six factors:

> (1)     an alternate forum exists in which the claim or action may be tried;
> (2)     the alternate forum provides an adequate remedy;
> (3)     maintenance of the claim or action in the courts of this state would work a substantial injustice to the moving party;
> (4)     the alternate forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim;
> (5)     the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternate forum, which shall include consideration of the extent to which an injury or death resulted from acts or omissions that occurred in this state; and
> (6)     the stay or dismissal would not result in unreasonable duplication or proliferation of litigation.

TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b).  "The statute does not mandate that a movant prove each factor or that each factor must weigh in favor of dismissal to require a motion to be granted." *In re Gen. Elec. Co.*, 271 S.W.3d 681, 687 (Tex. 2008).

16

We note there is a substantial overlap between statutory forum non conveniens caselaw and common law forum non conveniens caselaw, despite the fact that the statute has "'deep roots in the common law.'" *Quixtar*, 315 S.W.3d at 32 (quoting *Pirelli Tire*, 247 S.W.3d at 675). Further, Texas Courts "regularly consider United States Supreme Court precedent in both our common law and statutory forum non conveniens cases." *Id.*

The Texas Supreme Court has "decline[d] to establish a formulaic application for a trial court's forum non conveniens determination." *Id.* at 35. A trial court's decision about whether to dismiss a case on forum non conveniens grounds is reviewed for an abuse of discretion. *Gen. Elec.*, 271 S.W.3d at 685. A trial court "abuses its discretion if its decision is arbitrary, unreasonable, or without reference to guiding principles." *Id.*

Both Transit Mix and Liberty Mutual erroneously argue that Transit Mix had the burden of proof on a forum non conveniens. As noted below, Transit Mix argues this burden shifted to Liberty Mutual concerning whether Arkansas was an adequate forum. All of the cases cited are common law forum non conveniens cases and are, therefore, clearly distinguishable.[14] The Texas Supreme Court has held that, unlike the version of the statute in effect prior to 2003, the current version of the forum non conveniens statute "does not contain language placing the burden of proof on a particular party in regard to the factors." *Id.* at 687; *see In re Ensco Offshore Int'l Co.*, 311 S.W.3d 921, 927 (Tex. 2010) (per curiam). The court explained:

> [t]he statute simply requires the trial court to consider the factors, and it must do
> so to the extent the factors apply. To the extent evidence is necessary to support

---

[14]Transit Mix cites *Quixtar*, 315 S.W.3d at 31 (noting general common law rule is movant has a "heavy burden" but that a nonresident plaintiff's choice of forum deserves less deference). Liberty Mutual cites *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422, 430 (2007), and *Moussa*, 820 S.W.2d at 841.

> the positions of the parties, the trial court must base its findings and decision on the weight of the evidence, and certainly is entitled to take into account the presence or absence of evidence as to some issue or position of a party.

*Gen. Elec.*, 271 S.W.3d at 687.  We conclude that neither party had the burden of proof.

We note that at the hearing, the trial court's stated reason for granting the motion was that Smith "chose Arkansas for whatever reason."  Even so, the discussion at the hearing, while not specifically referencing the factors, included issues pertinent to most of the factors.  Although a trial court has no discretion in determining what the law is or applying the law to the undisputed or conclusively established facts,[15] a trial court does not abuse its discretion, even when the court's stated reason for the decision is wrong, if the result is correct under any theory of law.[16] We further note that in its written order, the trial court referenced balancing the parties' private interests and the state's public interests.

Although Liberty Mutual only explicitly challenges the Second and Fifth factors, there is no requirement that every factor weigh in favor of dismissal.  Since all factors must be considered by the trial court, we will consider all of the factors in determining whether the trial court abused its discretion.

---

[15]*See In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 781 (Tex. 2006) (orig. proceeding) (per curiam); *Griffin v. Birkman*, 266 S.W.3d 189, 196 (Tex. App.—Austin 2008, pet. denied); *Landon v. Jean-Paul Budinger, Inc.*, 724 S.W.2d 931, 935 (Tex. App.—Austin 1987, no writ).

[16]*Columbia Med. Ctr. Subsidiary, L.P. v. Meier*, 198 S.W.3d 408, 411 (Tex. App.—Dallas 2006, pet. denied); *Landon*, 724 S.W.2d at 935.

## VI.     Statutory Forum Non Conveniens

### A.     Factors 1 and 2:

The first two statutory factors concern whether Arkansas is an adequate forum. *Gen. Elec.*, 271 S.W.3d at 687. Liberty Mutual does not contest that this action can be tried in Arkansas. "An alternate forum is one where the defendant is amenable to process." *Ensco Offshore Int'l Co.*, 311 S.W.3d at 924. It is uncontested that Transit Mix is amenable to process in Arkansas and has appeared in Smith's lawsuit pending in Arkansas.

Transit Mix argues that Liberty Mutual had the burden to establish that Arkansas was not an adequate forum.[17] We have not been directed to any authority, nor are we aware of any, holding that the non-movant has the burden to prove the alternative forum is inadequate. As discussed above, the Texas Supreme Court has held that neither party bears the burden in statutory forum non conveniens cases. *See Gen. Elec.*, 281 S.W.3d at 687.

A forum is not inadequate merely because the law is less favorable to one party or the other. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981). Because of the complexity of a "comparative analysis of the procedures, rights, and remedies" available in two forums, the Texas Supreme Court has held such an analysis should only be given weight when the alternative

---

[17]Transit Mix cites *Direct Color Services, Inc. v. Eastman Kodak Co.*, 929 S.W.2d 558, 564 (Tex. App.—Tyler 1996, writ denied), *superseded by statute as stated in Adams v. Baxter Healthcare Corp.*, 998 S.W.2d 349, 356 (Tex. App.—Austin 1999, no pet.) (noting Direct Color Services predates the 1993 adoption of Section 71.051), *Vaz Borralho v. Keydril Co.*, 696 F.2d 379, 391 (5th Cir. 1983), *overruled on other grounds by In re Air Crash Disaster near New Orleans*, 821 F.2d 1147, 1163 n.25 (5th Cir. 1987), and *Yoroshii Investments (Mauritius) PTE. Ltd. v. BP International Ltd.*, 179 S.W.2d 639, 643 (Tex. App.—El Paso 2005, pet. denied) (citing *Sarieddine*, 820 S.W.2d at 841). Regardless of the extent these cases support Transit Mix's position, all of these cases are common law forum non conveniens rather than statutory forum non conveniens. Because the Texas Supreme Court has explicitly held neither party has a burden of proof in statutory forum non conveniens cases, we decline to adopt any common law standard imposing a burden on Liberty Mutual.

forum "would in substance provide no remedy at all." *Gen. Elec.*, 271 S.W.3d at 688; *see Ensco Offshore Int'l Co.*, 311 S.W.3d at 924.

According to Liberty Mutual, Arkansas is not an adequate forum because it applies the "made whole" rule to contractual subrogation. Liberty Mutual argues, citing Section 417.001(b) of the Texas Labor Code, that the first-money reimbursement scheme is crucial to the Texas worker's compensation system because it reduces costs for carriers. Going further, Liberty Mutual asserts that the Arkansas "made whole" doctrine prevents it from having any remedy in Arkansas courts. Liberty Mutual believes that Arkansas law would permit Smith to settle for an amount less than his actual damages and thereby avoid having to reimburse Liberty Mutual for his medical bills.[18] Because Arkansas provides some remedy, it is not necessary for us to conduct a comprehensive analysis.

While Arkansas law may be less favorable to Liberty Mutual than Texas law, Arkansas law does provide a remedy. If the recovery is sufficient to make Smith whole, Liberty Mutual can recover under Arkansas law. The mere fact that the alternative forum would provide a lesser recovery does not prevent the alternative forum from providing an adequate remedy. *See Berg v. AMF Inc.*, 29 S.W.3d 212, 217 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (factor not given substantial weight when foreign law provides "some recovery"). We conclude that Arkansas is an adequate forum.

---

[18]Transit Mix argues Liberty Mutual has greatly exaggerated the differences between Texas and Arkansas subrogation law. We do not express any opinion concerning whether Liberty Mutual's interpretation is a correct interpretation of Arkansas law.

**B.      Factor 3:  Trial in Arkansas Causes No Substantial Injustice to Liberty Mutual**

Liberty Mutual does not contest this factor.  In deciding this factor, the Texas Supreme Court has considered increased travel time, the availability of witnesses, and whether there is compulsory process to secure the attendance of witnesses.  *See Ensco Offshore Int'l Co.*, 311 S.W.3d at 925; *Gen. Elec.*, 271 S.W.3d at 689.  Unlike *Ensco Offshore International*, 311 S.W.3d at 926 (considering travel time between Australia, Singapore, and Dallas), this is not a case that would force Liberty Mutual to travel a significant distance to litigate in the alternative forum.  We take judicial notice that Bowie County, Texas, and Miller County, Arkansas, are adjacent counties.[19]  Liberty Mutual concedes the costs of litigating in Miller County, Arkansas, will not significantly differ from the cost of litigating only a few miles away in Bowie County, Texas.  It is uncontested that witnesses will be available in Arkansas and a compulsory process can secure their attendance.

**C.      Factor 4:  Arkansas Can Exercise Jurisdiction Over All the Defendants**

It is uncontested that Arkansas can exercise jurisdiction over all the defendants.  Transit Mix has appeared in the Arkansas suit and at least some discovery has been conducted in that suit.

---

[19]We also take judicial notice that the City of Texarkana is located in both Bowie County, Texas, and Miller County, Arkansas.

**D.      Factor 5:  Arkansas' Interests Predominate**

Liberty Mutual claims that Texas has a greater public interest in this litigation than Arkansas. In deciding which State's interests predominate, the Texas Supreme Court has adopted the common law *Gulf Oil*[20] factors:

> Generally, the public interest factors to be considered are administrative difficulties related to court congestion, burdening the people of a community with jury duty when they have no relation to the litigation, local interest in having localized controversies decided at home, and trying a case in the forum that is at home with the law that governs the case. *See Gulf Oil*, 330 U.S. at 508–09.  The private interest considerations generally are considered to be the ease of access to proof, the availability and cost of compulsory process, the possibility of viewing the premises, if appropriate, and other practical problems that make trial easy, expeditious, and inexpensive. *Id*. at 508; *see Pirelli*, 247 S.W.3d at 676.

*Gen. Elec.*, 271 S.W.3d at 691 (statutory forum non conveniens); *see Quixtar*, 315 S.W.3d at 32 (applying *Gulf Oil* factors to common law forum non conveniens).

The first three public interest factors weigh neither for nor against dismissal.  The record contains no evidence or arguments concerning court congestion or burdening the people of a community with jury duty when they have no relation to the litigation.  As judicially noted above, Bowie County and Miller County are adjacent counties.  The largest city in both counties is Texarkana, which (though having separate municipal governments) is a single city straddling the border between the two States.  Since both forums are essentially part of the same community, the local interest factor weighs neither for nor against dismissal.

Liberty Mutual argues that this lawsuit should be litigated in Texas courts because Texas law should apply.  As discussed above, we have determined Arkansas law should apply to this

---

[20]*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

case. Therefore, the factor that the court trying a case is at home with the law that governs the case favors dismissal.

The private interest considerations weigh slightly in favor of dismissal. Liberty Mutual concedes that the Bowie County and Miller County Courthouses are located only a few miles apart[21] and that the costs of litigation will be identical. Liberty Mutual does argue that enforcement of the judgment will be easier in Texas because Transit Mix is a Texas corporation. At trial, Transit Mix argued that the enforcement in "Arkansas is as good as in Texas." The record is devoid of any evidence supporting either claim. As noted above, neither party has the burden in a statutory forum non conveniens motion.

The trial court did not abuse its discretion in concluding Arkansas' interests predominate.

### E.    Factor 6:  The Dismissal Would Prevent Duplication of Litigation

Transit Mix emphasizes in its brief that, unless the motion is granted, it will be required to defend two lawsuits concerning the same subject matter. Liberty Mutual argues that subrogation claims, while derivative, can be asserted independently, *see Franks v. Sematech, Inc.*, 936 S.W.2d 959, 960 (Tex. 1997) (per curiam), and that it has a right to bring its subrogation claim independently in Texas.

Liberty Mutual cites *In re CVA General Contractors., Inc.*, 267 B.R. 773, 782 (Bankr. W.D. Tex. 2001), for the proposition that "the subrogee assumes the status as the real party in interest while the subrogor's interest becomes nominal." In that case, the court was not deciding

---

[21]We take judicial notice that the Bowie County District Court handles some nonjury matters in the Bi-State Justice Building located approximately four blocks from the Miller County Courthouse. In fact, the Bi-State Justice Building, the building in which this Court sits, is located partially in Bowie County, Texas, and partially in Miller County, Arkansas.

a dispute concerning whether the subrogee or the subrogor could control the course of the litigation. Rather, the court was merely holding that the subrogee could proceed despite the subrogor no longer existing, having been dissolved by virtue of the Chapter 7 bankruptcy proceeding. *Id.* Such a situation is clearly distinguishable from a disagreement between the subrogee and subrogor concerning the course of litigation.

The Texas Supreme Court has held that "[t]here is but one cause of action for an employee's injuries, and it belongs to the employee." *Franks*, 936 S.W.2d at 960 (concluding employee could intervene even after limitations had run). Liberty Mutual has provided us with no authority that the injured worker is required to respect the worker's compensation carrier's choice of forum. It is not necessary for us to determine the extent to which an injured employee can disregard the wishes of the worker's compensation carrier. We reject Liberty Mutual's argument that an injured employee must file his or her lawsuit in the forum desired by the worker's compensation carrier.

The Texas Supreme Court has recognized that the ability to resolve all claims in one trial favors the granting of a forum non conveniens motion. *See Ensco Offshore Int'l Co.*, 311 S.W.3d at 925. The trial court emphasized duplication of litigation at the hearing, and we concur with the opinion of the trial court that this factor is significant. Transit Mix should not be forced to undergo two discovery processes and two trials or be exposed to potentially inconsistent verdicts in two different states. The last factor favors a dismissal.

The doctrine of forum non conveniens is intended to prevent the imposition of an inconvenient jurisdiction on a litigant when the public and private interests at issue warrant a

24

different forum. *See Yoroshii Invs. (Mauritius) PTE. Ltd.*, 179 S.W.3d at 643. All of the factors which are considered are deemed to be either neutral or weigh in favor of a dismissal. As argued by Transit Mix, this balancing is not formalistic, and we must grant deference to the trial court. The accident occurred in Arkansas, Arkansas is an adequate forum, and Arkansas can assert jurisdiction over the entire suit. In Arkansas, there can be one fact-finder, one verdict, and one judgment. The balancing of the public and private interests favors dismissal. Most importantly, we are not reviewing this decision de novo—our standard of review is for an abuse of discretion. We conclude the trial court did not abuse its discretion in dismissing the lawsuit.

## VI. Whether the Doctrine of Dominant Jurisdiction Is Applicable Has Not Been Preserved for Appellate Review

In its fourth issue, Liberty Mutual argues that the trial court erred because Bowie County acquired dominant jurisdiction. Although the doctrine of dominant jurisdiction[22] applies when two courts have concurrent jurisdiction, several Texas courts have noted that the doctrine is confined to two courts with concurrent jurisdiction located within the same state. *See Ashton Grove L.C. v. Jackson Walker L.L.P.*, 366 S.W.3d 790, 794 (Tex. App.—Dallas 2012, no pet.); *Griffith v. Griffith*, 341 S.W.3d 43, 54 (Tex. App.—San Antonio 2011, no pet.); *Ex parte Jabara*, 556 S.W.2d 592, 596 (Tex. Civ. App.—Dallas 1977, no pet.) ("We conclude that the doctrine of

---

[22]"Dominant jurisdiction is a common law concept which is not based upon lack of jurisdiction, but on the grounds of comity, vexatious litigation, or the avoidance of a multiplicity of suits." *Ault v. Mulanax*, 724 S.W.2d 824, 828 (Tex. App.—Texarkana 1986, orig. proceeding); *see In re Puig*, 351 S.W.3d 301, 305 (Tex. 2011) (orig. proceeding) (per curiam) (noting Texas Supreme Court never held dominant jurisdiction results in exclusive jurisdiction). Under the common law doctrine of dominant jurisdiction, the court that first exercises jurisdiction, normally the court in which suit is first filed, acquires dominant jurisdiction to the exclusion of all other courts with concurrent jurisdiction over the subject matter. *See, e.g.*, *Perry v. Del Rio*, 66 S.W.3d 239, 252 (Tex. 2001) (orig. proceeding); *Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex. 1974) (orig. proceeding); *Finlan v. Peavy*, 205 S.W.3d 647, 651 (Tex. App.—Waco 2006, no pet.); *Gordon v. Jones*, 196 S.W.3d 376, 385 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

dominant jurisdiction does not apply to suits pending in other states. Texas courts may recognize prior proceedings in other states as a matter of comity, but pendency of a proceeding in another state does not oust the jurisdiction of Texas courts to entertain the same controversy."). It is not necessary, though, for us to determine whether the doctrine of dominant jurisdiction is applicable to the facts of this case.[23] It does not appear that Liberty Mutual presented this argument to the trial court. The error, if any, has not been preserved for appellate review. *See* TEX. R. APP. P. 33.1.

## VII.    Whether Section 71.051(e) Prohibits the Dismissal Has Not Been Preserved

In its final issue, Liberty Mutual argues that the trial court erred because Section 71.501(e) of the Texas Civil Practice and Remedies Code prohibits the dismissal of a personal injury lawsuit filed by a Texas plaintiff. Section 71.051(e) states that a court "may not stay or dismiss" a lawsuit if the plaintiff or some of the plaintiffs (provided they are properly joined and the action arose from a single occurrence) are legal Texas residents. TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(e). To the best we can discern, Liberty Mutual is claiming it is a Texas resident because its claim is derivative of Smith's claim and Smith was a Texas resident at the time the injury occurred. Transit Mix responds that this error has not been preserved and, alternatively, that Liberty Mutual is not the plaintiff. Transit Mix argues that Smith is the plaintiff as contemplated by the statute and Smith did not file the lawsuit in question.

---

[23]We note Liberty Mutual raises the doctrine of comity in its reply brief. An appellant is prohibited from raising new issues in a reply brief. *See, e.g.*, *Martin v. Martin*, 363 S.W.3d 221, 237 (Tex. App.—Texarkana 2012, pet. dism'd by agr.). We will not consider Liberty Mutual's comity arguments.

Liberty Mutual has not directed us to any place in the record showing that this argument was presented to the trial court. As argued by Transit Mix and conceded by Liberty Mutual, Liberty Mutual did not direct the trial court to Section 71.051(e). Although Liberty Mutual argued at the dismissal hearing that Smith was a Texas resident at the time Liberty Mutual filed the lawsuit, Liberty Mutual merely advanced this reason as a factor opposing dismissal. Liberty Mutual did not inform the trial court that the Texas forum non conveniens statute prohibits transfer if a properly-joined plaintiff is a Texas resident. Liberty Mutual's arguments to the trial court were insufficient to make the trial court aware of any complaint under Section 71.051(e). In order to preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context . . . ." TEX. R. APP. P. 33.1.

In its reply brief, Liberty Mutual argues that this issue is systemic error because it violates a mandatory statute. As noted above, violation of a mandatory statute is often not systemic error under *Marin*, and we are not willing to adopt the *Marin* error preservation categories for civil cases not involving juvenile delinquencies. To the extent Liberty Mutual's argument can be interpreted as arguing the error is fundamental, we conclude the error is not fundamental. *See Pirtle*, 629 S.W.2d at 920.

Liberty Mutual has not preserved this issue for our review.

## VIII.  Conclusion

Liberty Mutual's subrogation claim, as a derivative claim, is a personal injury cause of action and is governed by the Texas forum non conveniens statute.  We conclude that Arkansas law should apply to the facts of this case and that the trial court did abuse not its discretion in dismissing Liberty Mutual's lawsuit.[24]  Liberty Mutual's remaining issues are not preserved for appellate review.

For the reasons stated, we affirm.


Bailey C. Moseley
Justice


Date Submitted:       May 24, 2013
Date Decided:        June 28, 2013

---

[24]We note abatement is an option under forum non conveniens.  Liberty Mutual argued, though, against abatement in the trial court and has not requested abatement on appeal.  We do not express any opinion concerning whether an abatement might have been an appropriate remedy under the facts of this case.